UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 06-115 |
| JULIUS CERDES, JR. | SECTION "R" (3) |

### ORDER AND REASONS

Before the Court is defendant Julius Cerdes, Jr.'s petition for a writ of *coram nobis*.[1] The Government opposes Cerdes's petition.[2] For the following reasons, the Court denies Cerdes's petition.

## I.   BACKGROUND

This petition arises from Cerdes's conviction for conspiracy to distribute marijuana. Cerdes filed this petition asking the Court to vacate his conviction on the grounds that his guilty plea was coerced by a now-disgraced DEA agent. On April 13, 2006, Cerdes was charged in an indictment with one count of conspiring to distribute marijuana in violation of 21 U.S.C. § 846, one count of possessing with the intent to distribute

---

[1]   R. Doc. 108.
[2]   R. Doc. 118.

marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846(b)(1)(D), and one count of carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[3] Cerdes pleaded guilty to count one of the indictment—conspiracy to distribute marijuana in violation of 21 U.S.C. § 846—on September 20, 2006.[4]

In his factual basis, Cerdes admitted the following facts: DEA agent Chad Scott received information from a confidential source that Cerdes was awaiting delivery of marijuana at his residence from Ramon Quintanilla.[5] Based on this information, DEA agents, including Scott, and members of the Tangipahoa Parish Sheriff's Department set up surveillance at Cerdes's residence.[6] A vehicle that matched the description of Quintanilla's vehicle arrived at the property and entered a nearby shop.[7] Officers entered the shop, where they observed Quintanilla dismantling a tire.[8] Inside the tire, officers found bundles of marijuana that exceeded seventeen pounds in weight.[9] When officers asked Quintanilla about the marijuana, Quintanilla

---

[3] R. Doc. 1. Ramon Quintanilla was also charged in the first two counts of the indictment.
[4] R. Doc. 45.
[5] R. Doc. 44 at 1.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 2.
[9] *Id.*

2

responded that he was delivering it to "Junior," a nickname of Cerdes.[10] Officers then obtained a warrant to search Cerdes's home, where they found over 20 more pounds of marijuana in addition to marijuana stems and seeds.[11] Officers also found a duffel bag in Cerdes's attic that contained $46,750.00.[12] Cerdes drove up to his residence while officers were conducting their search, at which point they searched his vehicle and discovered a bag with 23.6 grams of marijuana under the driver's seat.[13] Cerdes had a firearm in his pocket at the time the search was conducted.[14] Officers also searched Cerdes's phone, which showed that he had called Quintanilla earlier that night.[15]

After Cerdes pleaded guilty to conspiring with Quintanilla to distribute marijuana, he was sentenced to eighteen months of imprisonment and two years of supervised release.[16] Cerdes did not appeal his conviction or sentence, nor did he seek habeas relief.

---

[10]  *Id.*
[11]  *Id.* at 3.
[12]  *Id.* at 4.
[13]  *Id.* at 3.
[14]  *Id.*
[15]  *Id.*
[16]  R. Doc. 57.

Roughly a decade after Cerdes was released, he moved for a writ of *coram nobis*.[17] In his petition, he contends that DEA agent Scott fabricated some of the evidence against Cerdes to advance a personal vendetta.[18] In particular, Cerdes contends that Scott took a bag of marijuana that Cerdes's associate was holding and planted it under the driver's seat of Cerdes's vehicle in order to subject Cerdes to the risk of being prosecuted under § 924(c)(1), which carries a five-year minimum term. When Scott "found" the marijuana under the driver's seat, he allegedly said to Cerdes, "[n]ow I have you with the gun protecting the drugs and you will do more time than the Mexican in your shop with the dope."[19] He contends that Scott also fabricated the evidence from the confidential source.[20] Cerdes claims that Scott caused three of Cerdes's boats to be seized, and took tens of thousands of dollars in cash from Cerdes's house, even though the boats and cash had no connection to the marijuana.[21]

Thereafter, Scott allegedly continued to threaten Cerdes with the possibility of a § 924(c) charge and suggested that he would not move forward with forfeiture proceedings of Cerdes's confiscated property if

---

17   R. Doc. 108.
18   *Id.*
19   *Id.* at 4.
20   R. Doc. 123 at 1.
21   R. Doc. 108 at 4.

Cerdes agreed to admit that he was involved with Quintanilla and to falsely accuse Cerdes's other acquaintances of buying cocaine from Cerdes.[22] Despite Cerdes's compliance with Scott's demands, Scott allegedly moved forward with seeking forfeiture of Cerdes's property.[23] Cerdes contends that Scott also arranged for Cerdes to be arrested for selling cocaine.[24]

After Cerdes was arrested for the cocaine charge, Scott allegedly continued to threaten Cerdes with the § 924(c) charge, in response to which Cerdes contends he filed a complaint about Scott's misconduct with the DEA.[25] Cerdes was then indicted in federal court. Scared of the risk of facing a five-year minimum term for the § 924(c) charge, Cerdes contends that he pleaded guilty to conspiring with Quintanilla to distribute marijuana, and that in connection with his plea agreement, he withdrew his complaint to the DEA.[26]

After Cerdes served his term, Scott was investigated for his misconduct in his capacity as a DEA agent. He was ultimately convicted of, among other

---

[22]  *Id.* at 5-6.
[23]  *Id.* at 6.
[24]  *Id.* at 7.
[25]  *Id.* Cerdes contends in his petition for *coram nobis* that the complaint was "about Scott's behavior," but during Scott's sentencing hearing, Cerdes testified that the complaint he filed with the DEA actually identified another officer as having planted the marijuana in his vehicle. Doc. 124-3 at 83:14-16.
[26]  *Id.*

things, obstruction of justice, perjury, and falsification of government records.[27] Cerdes was called to testify at Scott's sentencing hearing, during which Cerdes described to the sentencing court Scott's misconduct in connection with Cerdes's arrest, including planting marijuana in Cerdes's vehicle.[28] Scott was sentenced to over thirteen years in prison.[29]

Cerdes now relies on Scott's conviction as evidence that his guilty plea was coerced.[30] He contends that because his felony conviction continues to impact his rights, he is entitled to a writ of *coram nobis*.[31] He thus asks the Court to hold an evidentiary hearing on his petition.[32] The government opposes Cerdes's petition on the grounds that (1) Cerdes could have sought relief earlier and (2) even if Cerdes's allegations regarding Scott's misconduct were true, Cerdes cannot prove that he is actually innocent of conspiring to distribute marijuana in light of the evidence, including the quantity of marijuana and cash found on Cerdes's property, Quintanilla's statement that

---

[27]  *United States of America v. Chad Allen Scott*, No. 17-181, R. Doc. 648 (E.D. La. Aug. 19, 2021).
[28]  R. Doc. 124-3 at 68:16-89:1.
[29]  *United States of America v. Chad Allen Scott*, No. 17-181, R. Doc. 648 (E.D. La. Aug. 19, 2021).
[30]  R. Doc. 108.
[31]  *Id.*
[32]  R. Doc. 123.

6

he was delivering the marijuana to Cerdes, and the records of Cerdes's phone call with Quintanilla on the night they were apprehended.[33]

The Court considers the parties' arguments below.

## II. DISCUSSION

"The writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief." *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (quoting *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996)). Indeed, the Supreme Court has observed that "it is difficult to conceive of a situation in a federal criminal case today where a writ of *coram nobis* would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (internal quotation marks omitted).

"[C]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998)

---

[33] R. Doc. 118.

(internal quotation marks omitted). A petitioner seeking a writ of *coram nobis* must establish: (1) "a continuing civil disability as a consequence of [his] prior conviction," (2) that he "exercised reasonable diligence in seeking prompt relief," (3) that "no other remedy is available," and (4) that unless relief is granted, there will be a "complete miscarriage of justice." *Chico v. United States*, 703 F. App'x 292, 294 (5th Cir. 2017) (internal quotation marks omitted).

Here, the parties do not dispute that no other remedy is available to Cerdes or that Cerdes continues to suffer adverse collateral consequences as a result of his conviction.[34] The parties disagree about whether Cerdes has provided sound reasons for his failure to seek relief earlier and, if so, whether Cerdes is entitled to relief.

Here, the Court finds that Cerdes is not entitled to *coram nobis* relief because he has not met his burden of establishing sound reasons for his failure to seek relief earlier. *See Dyer*, 136 F.3d at 430 (one of the "equitable requirements imposed upon petitioners who request the 'extraordinary

---

[34]   In particular, Cerdes cites his inability to possess a firearm, which at least one court has considered an "adverse collateral consequence" for purposes of a *coram nobis* petition. *See Nowlin v. United States*, 81 F. Supp. 3d 514, 522 (N.D. Miss. Jan. 29, 2015) ("As [petitioner] has alleged loss of his Second Amendment right to keep and bear arms, . . . he has shown sufficient adverse consequences (loss of civil rights) to support the instant petition for a writ of *coram nobis*.").

8

remedy' of *coram nobis*" is that they "act with reasonable diligence in seeking relief"). This requirement exists to protect "the weighty interest in the finality of judgments." *Lee v. United States*, No. 08-2044, 2009 WL 3762112, at *4 (N.D. Tex. Nov. 10, 2009). "Because there is no applicable statute of limitations for a writ of *coram nobis*, a district court considering the timeliness of a petition must decide the issue in light of the circumstances of the individual case." *Chico*, 703 F. App'x at 294 (internal quotation marks omitted).

Although Cerdes did not know the full scope of Scott's misconduct in his capacity as a DEA agent until he learned of Scott's conviction, it is undisputed that Cerdes knew about Scott's misconduct in this matter since the inception of this case. Indeed, Cerdes filed a complaint with the DEA in 2006 that outlined the same misconduct that Cerdes now challenges through his *coram nobis* petition. But Cerdes did not seek legal relief until he filed the instant petition, nearly fifteen years after he pleaded guilty. He did not appeal his conviction or sentence, nor did he seek relief under 28 U.S.C. § 2255. Under such circumstances, *coram nobis* relief is unavailable. *See Esogbue*, 357 F.3d at 535 (if petitioner's claims "reasonably could have been raised in [a § 2255] petition, it cannot be said that he has made the necessary showing of a 'complete miscarriage of justice'"); *see also Dyer*, 136 F.3d at

9

421-22 (petitioner failed to demonstrate "sound reasons" for failure to seek relief earlier when he learned of "a colorable legal basis to attack his conviction" nine years "before finally choosing to do so"); *Chico*, 703 F. App'x at 294 (petitioner's petition for *coram nobis* was untimely when she waited two years after learning of the basis of her ineffective assistance of counsel claim before she filed her petition); *United States v. Malouff*, 613 F. App'x 432, 432 (5th Cir. 2015) (petitioner "failed to make the necessary showing of a complete miscarriage of justice" when his "substantive claims could have been raised either on direct appeal or in a motion under 28 U.S.C. § 2255").

The thrust of Cerdes's excuse for his failure to timely seek relief is that until Scott was convicted, Cerdes did not expect to succeed on an appeal or a § 2255 challenge.[35] But Cerdes alleges no facts suggesting that Scott would have exercised power over the outcome of such a proceeding, and Cerdes cites no cases, nor is the Court aware of any, in which a petitioner's belief that his appeal or § 2255 challenge may not succeed constituted "sound reasons" for his failure to enforce his rights. *Compare Santos Sanchez v. United* States, 2007 WL 9757565, at *3 (S.D. Tex. Jan. 26, 2007), *aff'd*, 482 F. App'x 953 (5th Cir. 2012) (petitioner showed sound reasons for delay when he established that he did not seek relief sooner because of his attorney's bad

---

35   R. Doc. 108 at 11-12.

advice). Because Cerdes did not "act[] with reasonable diligence in promptly pursuing [his] rights," *Chico*, 703 F. App'x at 294, his petition must be denied.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES Cerdes's petition.

New Orleans, Louisiana, this ___1st___ day of March, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE